IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JERRY HEARIN, DEREK LEWIS, JAMES GRIMES, ALLEN KIRKLAND, INDIVIDUALLY AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED CURRENT AND FORMER EMPLOYEES,<br><br>Plaintiffs,<br><br>v.<br><br>SOBER LIVING AMERICA, INC. AND JAMES C. deVARENNES,<br><br>Defendants. | Civil Action No.: 1:21-cv-00270-MHC |

## JOINT MOTION FOR STIPULATED JUDGMENT APPROVING SETTLEMENT AND RELEASE AGREEMENT

COME NOW Plaintiffs Jerry Hearin, Derek Lewis, James Grimes and Allen Kirkland ("Plaintiffs") and Defendants Sober Living America, Inc. and James C. deVarennes ("SLA" or "Defendants") (collectively the "Parties"), by and through their respective undersigned counsel, hereby file this Joint Motion for Stipulated Judgment Approving Settlement and Release Agreement. In support of their joint motion, the Parties state as follows:

**STATEMENT OF FACTS AND SUMMARY OF PROCEEDINGS**

A. <u>Pleadings, Discovery, and Pre-Trial Motions</u>.

Plaintiffs filed this case on January 15, 2021. The Complaint alleges that current and former Work Development, Help Center, Guest Service, Driver, Administrative Staff and Director employees who work or worked for SLA at any time between June 1, 2018 and May 12, 2021 were not paid for all hours worked and as a result, were not paid minimum wage and overtime in violation of the Fair Labor Standards Act ("FLSA").

The Parties agreed to stay the proceedings to explore settlement of the collective allegations and whether a resolution of such claims could be reached. The Parties agreed to a live, in-person mediation that took place on May 17, 2021 with mediator A. Lee Parks, Esq. of Parks, Chesin, Walbert, P.C. in an effort to reach a global resolution of all claims, including the putative collective claims.

B.  Settlement

On May 17, 2021, the Parties conducted a successful live private mediation with Mr. Parks. (Bryant Decl. ¶ 13.) The Parties reached a settlement as to all claims in the litigation, including all claims encompassed by Plaintiffs' Complaint including collective wage and hour claims. (*Id.*) The Parties then executed a Settlement Agreement and Release (the "Agreement") that memorializes the terms of the settlement, a copy of which is attached hereto as Exhibit 1. The Parties agreed

that they would submit this Joint Motion for Approval to this Honorable Court requesting the Court's approval of the Agreement of the FLSA collective claims.

## ARGUMENT AND CITATION OF AUTHORITY

In order to have an enforceable release of FLSA claims in this Circuit, the Court must review and approve agreements settling alleged violations of the FLSA. *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) (holding claims for back wages arising under the FLSA may be settled or compromised only with approval of the Secretary of Labor or the court). "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc.*, 679 F.2d at 1353. Accordingly, the Parties are submitting a copy of the Agreement for the Court's review and approval. A proposed Order entering the stipulated judgment approving the Agreement is attached hereto as Exhibit 2.

### I. APPROVAL OF PAYMENTS TO PLAINTIFFS AND MEMBERS OF THE FLSA COLLECTIVE

In order to approve a settlement of minimum wage and overtime claims proposed by an employer and an employee, a court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims

3

raised pursuant to the FLSA. *Lynn's Food Stores, Inc.*, 679 F.2d at 1355. There is a strong presumption in favor of finding a settlement fair. *See Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) (noting that Eleventh Circuit Court of Appeals "favor[s] and encourage[s] settlements in order to conserve judicial resources."). The Eleventh Circuit has detailed the circumstances that justify court approval of an FLSA settlement in a litigation context as follows:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food Stores, Inc.*, 679 F.2d at 1355. In determining whether the settlement is fair, adequate, and reasonable, courts sometimes examine the factors used in approving the settlement of class actions under Federal Rule of Civil Procedure 23:

> (1) the existence of collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of plaintiff's success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of counsel.

*See e.g.*, *Prieto v. Scheeler's Cafe De Marco, Inc.*, 2017 WL 359220, at *1 (M.D. Fla. Jan. 9, 2017) (citing *Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)); *Garcia v. Riccy's Landscaping Servs., Inc.*, No. 6:08-cv-706-Orl- 28GJK, 2009 WL 347418 at *2 (M.D. Fla. Feb. 11, 2009); *Hitchcock v. Orange County, Fla.*, No. 604CV1722ORL28JGG, 2006 WL 3614925 at *3 (M.D. Fla. Dec. 11, 2006).[1]  As set forth below, examination of each of these factors shows that the terms of the Agreement are fair, adequate, and reasonable and should be approved by the Court.

    1. <u>The Possible Existence of Collusion</u>.

Prior to the mediation, counsel for Plaintiffs and Defendants exchanged correspondences regarding the potential scope of the putative collective. (Bryant Decl. ¶ 9.)  This exchange included the potential damages for the Named Plaintiffs as well as the potential number of workweeks at issue for the putative collective with respect to Plaintiffs' minimum wage and overtime claims.  Plaintiffs claim, in short, that Defendants did not pay them for all their hours of work, resulting in minimum wage and overtime violations of the FLSA.  Defendants maintain that most of the

---

[1] The Parties note, however, that concern for absent class members, which underlies the approval factors in a Rule 23 settlement is less present in an FLSA settlement such as this one, where each opt-in Plaintiff has the right to review and accept or reject the settlement agreement.

hours that Plaintiffs claim to have "worked" were not in fact compensable employment under the FLSA, but rather time participating in SLA's substance abuse and addiction programs. The Parties' pre-mediation information exchange allowed the Parties to efficiently focus on the issues in dispute during the mediation, including disputes as to damages.

As set forth above, the Parties engaged in extensive and continued settlement negotiations before ultimately reaching an agreement to settle the case during mediation. Thus, the settlement in this case is the ultimate result of arms-length negotiations by Parties who were well represented by counsel and made aware of all potential outcomes.

Under the terms of settlement (if approved), the 1,119 putative class members would share, for their minimum wage and overtime claims, the total gross amount of $182,000 net of all attorney's fees and costs. The proposed allocation of this settlement amount is included in Exhibit A to the Settlement Agreement.

The Parties calculated the amount of each Plaintiff's distribution from the $182,000 based on the number of weeks worked for SLA during the relevant time period using a 3-year statute of limitations. (Bryant Decl. ¶ 16.) The allocations were weighted towards the period prior to September 30, 2020 because on October 1, 2020, SLA began a process to more accurately record hours worked as opposed

to hours participating in SLA's programs. The relevant time period for this case is June 1, 2018-May 12, 2021.

Defendants deny any liability under the FLSA and deny that Plaintiffs are entitled to any recovery in this lawsuit; however, without admitting liability and solely for the purposes of avoiding ongoing costs of litigation, Defendants have agreed to make the settlement payments reflected in the Agreement.

In exchange for these settlement payments, Plaintiffs will provide Defendants with a tailored release covering federal and state wage and hour claims only which arose during the time period at issue in the case. *See* Exhibit 1, Settlement Agreement ¶ 3.  All of the above, combined with the fact that this case was mediated with an experienced private mediator, establish that this settlement was reached by arms-length negotiations without collusion by or on behalf of any parties.

2. <u>The Complexity, Expense, and Likely Duration of the Litigation</u>.

The Agreement allows Plaintiffs to take a substantial recovery now, without suffering the delay and risk of litigating the claims.  In this case, further litigation including significant discovery of putative class members regarding their hours of work such as written discovery and depositions, along with significant summary judgment briefing on the disputed legal issues in the case such as what tasks constitute "work" in the context of participating in a substance abuse and addiction

7

recovery treatment plan, willfulness and liquidated damages, and appeals could drag on for years and require the expenditure of a tremendous amount of resources. Fees and costs in this case would only have continued to increase for both sides if the case had not settled.

    3. <u>The Stage of the Proceedings and the Amount of Discovery Completed</u>.

This factor considers whether the parties have had the opportunity to fully evaluate the claims. *Carnegie v. Mutual Sav. Life Ins. Co.*, No. Civ. A. CV-99S3292NE, 2004 WL 3715446, *22 (N.D. Ala. 2004); *Meyer v. Citizens and Southern Nat. Bank*, 677 F. Supp. 1196, 1209-10 (M.D. Ga. 1988) citing *Holmes v. Continental Can Company*, 706 F.2d 1144, 1149 (11th Cir. 1983).

In this case, the Parties exchanged significant discovery in anticipation of mediation including Defendants' production of all of the Named Plaintiffs' time and pay records and numbers of total workweeks worked by putative collective members so that both sides could understand the scope of the collective claims. (Bryant Decl. ¶ 9.) Plaintiffs would have required that Defendants produce significant additional documents and conduct significant additional discovery had the case not settled, including significant e-discovery. As a result of these efforts, the Parties have had sufficient information upon which to assess the potential merit of each claim, ultimate liability, and the apparent risk of proceeding to trial.

4. <u>The Probability of Plaintiffs' Success on the Merits</u>.

Defendants have asserted that Plaintiffs did not work the hours they claim but rather worked less than forty (40) hours, and did not work enough hours such that there were any minimum wage violations. Defendants also deny that they willfully violated the FLSA and have asserted the "good faith" defense to liquidated damages under 29 U.S.C. § 260. Accordingly, disputes exist as to the amount of overtime worked, if any, and as to whether there were any minimum wage violations. Plaintiffs maintain that they worked hours such that they pay they received did not cover minimum wage. that on some occasions they worked in excess of forty (40) hours per week, that Defendants willfully violated the FLSA by not paying minimum wage and overtime, and that Defendants cannot satisfy the requirements of the "good faith" defense to liquidated damages under 29 U.S.C. § 260. The Parties therefore disagree on the likelihood of Plaintiffs' success on the merits.

5. <u>The Range of Possible Recovery</u>.

"[T]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

As summarized above, the Parties dispute the amount of damages to which Plaintiffs would be entitled if Defendants did not prevail on their defenses. Under Defendants' calculation methodology, Plaintiffs are entitled to nothing because they did not work in excess of forty (40) hours per week and because the pay they received was sufficient to cover minimum wage for the hours they worked, without liquidated damages, for two years. Under Plaintiffs' calculation methodology, Plaintiffs are entitled to recover for all of the hours they worked, which result in both unpaid minimum wage and overtime, doubled for liquidated damages, for three years.

If Plaintiffs' calculation methodology is correct, assuming Defendants are not entitled to a wage credit, and all hours participating in the SLA program are deemed compensable, Plaintiffs maintain that the range of possible net recovery for the entire putative class is in excess of $1,000,000.00 in overtime back pay and liquidated damages. However, if Defendants are correct, Plaintiffs are not entitled to any recovery. The settlement payments to Plaintiffs of $182,000 provides a reasonable compromise of individually calculated minimum wage and overtime damages.

6. <u>Counsels' Opinions</u>.

Based on what the Parties learned through informal discovery, from witness interviews, and from extensive research and investigation, the Parties negotiated a

fair settlement for the Plaintiffs. By settling, Plaintiffs avoid the risks of not obtaining a recovery at all, establishing significant liability at trial, avoid substantial and indefinite delay in payment involved in having to wait for trial and any appeals, and avoid potential adverse determinations on the liability and damages issues outlined above. Counsel for both Parties therefore recommend acceptance of this settlement and represent herein that the settlement is fair, beneficial, and equitably allocated among the settling Plaintiffs.

## II.   APPROVAL OF PAYMENT OF ATTORNEYS' FEES[2]

The Agreement provides that Defendants shall pay Plaintiffs' attorneys' fees and costs in the amount of $83,500. *See* Exh. 1 ¶ 2(a)(3). For purposes of this motion, the $83,500 is allocated as $1,709.81 in costs and $81,790.19 in fees. The Court should therefore approve this payment of attorneys' fees and costs.

The FLSA requires that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiff, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Fee awards are mandatory for prevailing plaintiffs in FLSA cases. *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985). The Supreme Court has held that a party is a

---

[2] While Defendants do not oppose Plaintiffs' request for approval of payment of attorney's fees, Defendants do not join in the request.

"prevailing party" for purposes of an attorneys' fee award if the party "succeeded on any significant claim affording it some of the relief sought." *Texas State Teachers' Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989). In the instant action, Plaintiffs stand to recover a favorable settlement payment of a substantial number of minimum wage and overtime hours. Thus, Plaintiffs are entitled to payment of their attorneys' fees and costs in this action by Defendants in the amount stated in the Agreement.

The total requested attorneys' fee is $83,500. (Bryant Decl. ¶ 15.) Adding the requested costs and fees to the $182,000 to be paid to Plaintiffs and the $10,000 for Service Awards to the Named Plaintiffs, the approximately $18,000 paid by Defendants to a third-party administrator to administer the settlement, the total settlement amount is $293,500. The requested fees and costs therefore represent less than 29% of the total settlement amount.

Plaintiffs' Counsel took this case on a contingency basis, which provides for the payment of attorneys' fees in the amount of 40% of any settlement or on a lodestar basis, whichever is greater, and Plaintiff's Counsel has agreed to the substantially lower percentage of just under 29%. (Bryant Decl. ¶ 22.) Because of this contingency fee arrangement, Plaintiffs' Counsel has not received payment for any of their time litigating the case, nor have they received reimbursement for their

out-of-pocket costs expended. (*Id.*) Regardless, Plaintiffs' Counsel undertook the financial risk of potentially unsuccessful litigation, in an effort to recover minimum wage and overtime pay for workers they believe were not paid for all hours worked.

Courts routinely approve similar contingency agreements in the amount of one-third or more, and it would be fair and reasonable to do so here and approve a lesser percentage. *See e.g.*, *Wreyford v. Citizens for Transportation Mobility, Inc.*, No. 1:12-CV-2524-JFK, 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014); (approving a one-third fee); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (adopting the percentage-of-the-common fund approach in an FLSA settlement and finding that the agreed upon 39% covering fees and costs was reasonable as a matter of law); *Burkholder v. City of Fort Wayne*, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (finding 33.3% of the total settlement amount is reasonable in an FLSA action); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064–65 (D. Minn. 2010) (collecting cases and granting award of 33%). Viewed under a common fund analysis, therefore, Plaintiffs' fee request is eminently reasonable.

Plaintiffs are aware, however, of cases in this circuit scrutinizing FLSA

settlements wherein attorneys' fees and payments to Plaintiffs were negotiated "simultaneously." *See*, *e.g.*, *Martin v. Huddle House, Inc.*, No. 2:10-CV-0082-WCO, 2011 WL 611625, at *2 (N.D. Ga. Feb. 11, 2011). Plaintiffs note that *Martin* and the cases cited therein did not involve "common fund" collective action settlements, but rather simultaneous negotiation of payments to individual plaintiffs and separate payments to the attorneys. *Martin* involved a settlement which netted the plaintiff's counsel $8,500 and only provided $6,500 in payments to the plaintiffs. Likewise, cases citing *Martin* for the suggestion that fees should be negotiated separately from wages do not involve common fund settlements of collective actions. *See*, *e.g.*, *Marshall v. Good Vocations, Inc.*, No. CV 111-200, 2013 WL 394389, at *1 (S.D. Ga. Jan. 31, 2013); *Barnes v. Ferrell Elec., Inc.*, 2013 WL 5651903, at *2 (S.D. Ga. Oct. 16, 2013). Accordingly, Plaintiffs respectfully submit that it is entirely proper to settle an FLSA collective action for a common fund. Here, the attorney's fees and costs were negotiated after the relief to the Plaintiffs was agreed to, as a reasonable percentage of the overall common fund, and Plaintiffs' counsel agreed to a substantially lower percentage than the 40% to which counsel was contractually entitled.

 Lead counsel for Plaintiffs has litigated numerous class and collective wage-and-hour actions in numerous federal district courts across the country. (Bryant

14

Decl. at ¶ 3.) This FLSA collective action exists because Plaintiffs' counsel, John Roper, discovered the alleged collective violations evaluating an individual employment case and sought the assistance of Lead Counsel who has diligently pursued relief on behalf of the FLSA collective since that time, including hours of reviewing and analyzing data as well as research regarding the collective claims and potential defenses to same. (Bryant Decl. at ¶¶ 6,7.)

Lastly, Plaintiffs note that the settlement agreement imposes substantial post-approval work on Plaintiffs' Counsel. Specifically, Plaintiffs' Counsel is responsible for explaining the settlement to Plaintiffs, counseling them regarding their rights in the settlement, and securing acceptances from Plaintiffs during the tight 60-day notice time frame. *See* Ex. 1. Accordingly, if the Court is inclined to scrutinize Plaintiffs' fees for the purpose of reducing the claimed fee amount, Plaintiffs respectfully request that the Court reserve such analysis for after settlement administration, at which point Plaintiffs' counsel could submit their contemporaneous time entries with additional briefing, if necessary.

### III. Service Payments Should Be Approved.

Under the terms of the Settlement Agreement, the parties have allocated and are requesting approval for service payments for the Named Plaintiffs in the amount of $2,500 per Named Plaintiff totaling $10,000. This is in recognition of the Named

Plaintiffs' willingness to pursue this case on behalf of themselves and others, and for the time and effort they spent assisting Plaintiffs' Counsel through meetings, calls and emails, mediation discussions and participating in the mediation.  (Bryant Decl. ¶¶ 6,7,12,13.)  Each putative class member benefited from the Named Plaintiffs important contributions to this case.

These service payments are fair and reasonable, were already included in the allocation, and the parties respectfully request they be approved. Such service payments have been widely accepted and approved in FLSA collective settlements. *See, e.g., Bozak v. FedEx Ground Package Sys., Inc.*, 2014 WL 3778211, at *4–5 (D. Conn. July 31, 2014) (approving $10,000 incentive award and identifying cases awarding similar or higher amounts); *Whittington*, 2013 WL 6022972, at *6 (approving $7,500.00 service award); *Torres v. Gristede's Op. Corp.*, 2010 WL 5507892, at *7 (S.D.N.Y. Dec. 21, 2010) (awarding $15,000 service award); *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677–78 (S.D. Iowa 2009) (approving $10,000 service payment); *Su v. Elec. Arts, Inc.*, 2006 WL 4792780, *5 (M.D. Fla. Aug. 29, 2006) (approving $10,000 service payment); *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (recognizing that service payments are "particularly appropriate in the employment context" when the named plaintiff is a "former or current employee of the defendant . . . by

lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.").

As further support for approval of the requested service payments, the Honorable Judge Leigh Martin May of the Northern District of Georgia recently approved service payments in a FLSA collective with almost identical circumstances as this matter. *See, Carlos Martinez, et al. v. Woodvalley Landscape, Inc.* at *4-5 (N.D. Ga. Feb. 17, 2021) (approving $2,500 service payment to each named plaintiff). Judge May ruled that despite the holding in *Johnson v. NPAS Solutions, LLC,* 975 F.3d 1244, 1255-61 (11th Cir. 2020), where the appellate court invalidated an award of service fees in a class action, the *Johnson* holding is distinguishable because *Johnson* was a Rule 23 opt-out class action and not a FLSA opt-in collective action. As is the case here, in *Martinez,* Judge May applauded the parties for negotiating the service payments separately and ultimately subtracting the service payments from the amount of attorney's fees so as to not diminish the amount that the employees received. (*Id.*) Finally, Judge May found that the service payments were acceptable and the amounts reasonable. (*Id.*)

## **CONCLUSION**

For the reasons set forth above and for good cause shown, the Parties respectfully request that this Court enter the Order attached hereto as Exhibit 2

17

approving the Settlement Agreement (attached hereto as Exhibit 1) by stipulated judgment.

Respectfully submitted this 4th day of August, 2021.

| | |
|---|---|
| */s/ J. Russ Bryant* | *s/ Eric R. Magnus* |
| John W. Roper | Eric R. Magnus |
| Georgia Bar No. 614159 | Georgia Bar No. 801405 |
| The Roper Law Firm | Lauren Gordon |
| 233 12th Street Suite 602 | Georgia Bar No. 557058 |
| Columbus, GA 31901 | JACKSON LEWIS P.C. |
| (706)596-5353 | 171 17th St., NW, Suite 1200 |
| (706)780-1014-fax | Atlanta, GA 30363 |
| johnroper@roperlaw.com | Telephone: (404) 525-8200 |
| | Facsimile:  (404) 525-1173 |
| J. Russ Bryant | Email: magnuse@jacksonlewis.com |
| TN BPR No. 033830 | lauren.gordon@jacksonlewis.com |
| Robert E. Turner, IV | |
| TN BPR No. 35364 | *ATTORNEYS FOR DEFENDANTS* |
| Robert E. Morelli, III | |
| TN BPR No. 37004 | |
| JACKSON, SHIELDS, YEISER, HOLT, OWEN & BRYANT | |
| 262 German Oak Drive | |
| Memphis, Tennessee 38018 | |
| Tel: (901) 754-8001 | |
| Fax: (901) 759-1745 | |
| rbryant@jsyc.com | |
| rturner@jsyc.com | |
| rmorelli@jsyc.com | |

*Attorneys for Plaintiffs and the Collective*

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel certifies that this document was prepared in compliance with LR 7.1, NDGa. This document was prepared in Times New Roman 14-point font.

*s/ J. Russ Bryant*
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2021, I electronically filed the foregoing **JOINT MOTION FOR STIPULATED JUDGMENT APPROVING SETTLEMENT AND RELEASE AGREEMENT** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of all attorneys of record

*s/ J. Russ Bryant*